UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____ x

SHAYLA SAPP,

                           Plaintiff,

        Against

CITY OF GENEVA, NEW YORK;
and BRIAN KELLY, Building Inspector for the City of
Geneva, in his official capacity and his personal capacity.

                        Defendants.

_____ x

**COMPLAINT**

**CIVIL ACTION NUMBER**

**JURY TRIAL DEMANDED**

## I. PRELIMINARY STATEMENT

1.     Plaintiff SHAYLA SAPP ("Ms. Sapp") brings this action against THE CITY OF GENEVA, NEW YORK, and BRIAN KELLY ("Defendants") to vindicate the violation of her state and constitutional rights to due process, protection from unlawful seizures, the violation of legally established procedures regarding code enforcement, and freedom from illegal ejectment from her home.

2.     Ms. Sapp was the lawful resident of an apartment located at 110-112 Andes Avenue, Apartment #1 in Geneva, Ontario County, New York, 14456, after having entered into a year-long lease with the property owner, A6 Properties, LLC. In the middle of winter on the afternoon of January 30, 2018, another tenant of the apartment building knocked on her door to inform her that the entire five-unit dwelling was being immediately condemned. Ms. Sapp found an Order to Vacate notice tucked above her mailbox and a placard posted on the entrance to the property. The Order to Vacate notice stated that the City of Geneva and Brian Kelly, Geneva

Building Inspector, were ordering the building to be immediately vacated because the landlord had failed to have it inspected and it lacked an operating permit.

3.     Ms. Sapp was not given prior notice of the Defendants' intention to vacate the building, and Ms. Sapp was not given an opportunity to challenge the determination before or after she was ordered to leave her residence by Defendant Brian Kelly. As a result of Defendants' actions and inactions, Ms. Sapp and her five-year old daughter were made homeless and suffered other injury and loss.

4.     Ms. Sapp asserts that Defendants, in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, the Fourth Amendment to the Constitution of the United States, and State and Local statutes, codes, and regulations, unlawfully and without due process of law, caused her to be removed from her apartment and deprived her of her property rights thereto. Defendants' actions and inactions directly resulted in the loss of Ms. Sapp's apartment, homelessness, monetary losses, as well as emotional distress and embarrassment.

5.     In bringing this action, Ms. Sapp seeks an order from this Court granting compensatory and punitive damages, declaratory relief, injunctive relief, costs and fees.

## II. JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in conjunction with 42 U.S.C. § 1983 (The Civil Rights Act of 1871) because Plaintiff's claims constitute violations of the Constitution of the United States.

7.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to reach Plaintiff's pendent state law claims as these claims arise out of a common nucleus of operative facts.

8.     Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because all the events or omissions giving rise to the Plaintiff's claims occurred in this judicial district.

9.     The Court has the authority to grant monetary and injunctive relief pursuant to 42 U.S.C. § 1983 and RPAPL § 853; fees and costs pursuant to 42 U.S.C. §1988, and declaratory relief pursuant to 28 U.S.C. § 2201.

### III. PARTIES

10.     Plaintiff Shayla Sapp is a 25 year-old single mother and currently rents an apartment at 32 Pulteney Street, Apartment #1, Geneva, Ontario County, New York.

11.     Defendant City of Geneva is a duly formed municipality located in New York and organized under the laws of New York.

12.     Defendant Brian Kelly is an employee of the City of Geneva, and upon information and belief was working as a Building Inspector at the time of the incidents complained of. He is sued in both his official and personal capacities.

### IV. LEGAL FRAMEWORK

#### Due Process of Law

13.     Under the Fourteenth Amendment to the United States Constitution, a state may not "deprive any person of life, liberty or property without due process of law."

14.     Before a party suffers a deprivation by a state actor, procedural due process requires notice and an opportunity to be heard. *Fuentes v. Shevin, Parham and Cortese*, 407 U.S. 67, 80 (1972).

15.     When tenants are directed to vacate their properties by government officials, notice and opportunity for a hearing must be afforded prior to the deprivation of housing, unless there is an emergency which creates an imminent threat to the safety of the tenants. *Flatford v. City of Monroe*, 794 F.Supp 227, 233 (E.D. Michigan 1992), reversed in part and affirmed in part by *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994)(finding that tenants who are directed to vacate housing by code enforcement officials have a clearly established right to a pre-eviction hearing in the absence of exigent circumstances).

16.     Notice and hearing may only be postponed until after a deprivation in very limited circumstances where there is, among other things, a "special need for very prompt action" "under the standards of a narrowly drawn statute." *Fuentes,* 407 U.S. at 91.

### Unlawful Seizure

17.     Under the Fourth Amendment to the United States Constitution, a person has the "right ... to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

18.     A "seizure" of property within the meaning of the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).

19.     Fourth Amendment protection from unlawful seizure applies within the civil context. *Soldal*, 506 U.S. at 66-69 (collecting cases and, in dicta, describing hypothetical seizure

of a house in order to verify compliance with a housing regulation as a "transgression" falling within the parameters of the Fourth Amendment).

### New York State Law and Regulations on Enforcement of Building Codes

20.     The text of the New York State Uniform Fire Prevention and Building Code is found in Title 19 of the New York Codes, Rules and Regulations ("19 NYCRR"), Parts 1219 through 1229, and in publications incorporated by reference in 19 NYCRR Parts 1219 through 1229, including periodic supplements.

21.     Pursuant to New York Executive Law § 381(2), local governments are required to enforce the New York Uniform Fire Prevention and Building Code, unless exempted by regulation of the Secretary of State.

22.     Pursuant to New York Executive Law § 378, New York's Uniform  Fire Prevention and Building Code addresses a range of housing requirements, including occupancy, safety and sanitary conditions.

23.     Under New York Department of State regulation 19 NYCRR § 1219.1, the New York State Uniform Fire Prevention and Building Code includes the New York State Property Maintenance Code.

24.     The Property Maintenance Code is to be administered and enforced in accordance with local law. Property Maintenance Code of New York State §109.1.

25.     Under New York Department of State regulation 19 NYCRR § 1226.1, all existing residential and nonresidential structures must comply with the Property Maintenance Code of New York State.

26.     Property Maintenance Code of New York State § 107.1 authorizes a structure to be condemned pursuant to the provisions of the code "[w]hen a structure … is found to be unsafe, or when a structure is found unfit for human occupancy, or is found unlawful."

27.     When a property is condemned pursuant to Property Maintenance Code of New York State § 107.1, "a notice shall be posted in a conspicuous place in or about the structure affected by such notice." Property Maintenance Code of New York State § 107.3.

28.     Under Property Maintenance Code of New York State § 107.4, "no person shall occupy a placarded premises."

29.     When a property is condemned pursuant to Property Maintenance Code of New York State § 107.1, "[t]he placard shall be removed whenever the defect or defects upon which the condemnation and placarding action were based have been eliminated." Property Maintenance Code of New York State § 107.3.

30.     Condemnations pursuant to Property Maintenance Code of New York State § 107.1 are bound by the statutory requirements articulated in the 2016 Uniform Code Supplement. New York Department of State regulation 19 NYCRR § 1226.1.

31.     2016 Uniform Code Supplement § 107.1 states:

Nothing in this Chapter 1, or elsewhere in the Uniform Code, or in any regulation promulgated pursuant to Executive Law § 381(1), shall be construed as authorizing any governmental unit or agency responsible for administration and enforcement of the Uniform Code to do so in a manner that deprives any person or entity of due process of law. In particular, but not by way of limitation, nothing in this Chapter 1 relating to posting, placarding and/or condemnation of buildings or structures that are unsafe, unfit for human occupancy or unlawful shall be construed as authorizing any governmental unit or agency responsible for administration and enforcement of the Uniform Code to post, placard or condemn any such building or structure and/or to remove any owner or occupant or cause any owner or occupant to be removed from any such building or structure without providing such notice and opportunity to be heard (and, if applicable, right of

appeal) as may be required under the applicable circumstances by applicable Constitutional provisions.

32.    The 2017 Uniform Code Supplement contains an identical provision regarding due process. 2017 Uniform Code Supplement § 107.3.

33.    Pursuant to New York Executive Law 376-a, the New York Secretary of State is responsible for establishing a program of training code enforcements officers and issuing certificates to adequately trained code officers, and revoking such certificates.

**Geneva City Code Chapter 230**

34.    Defendant City of Geneva is subject to the New York Uniform Fire Prevention and Building Code, with some amendments, as adopted in Chapter 230 of the Geneva City Code. Among other provisions, the New York Uniform Fire Prevention and Building Code replaced Geneva City Code Chapter 170 (Operating Permits), Chapter 171 (Fire Safety), and Chapter 264 (Property Maintenance Code).

35.    Geneva City Code § 230-12 specifies the role of a designated Code Enforcement Officer in enforcing the New York Uniform Fire Prevention and Building Code and local code provisions, and enumerates specific powers and duties of the Code Enforcement Officer. It also provides for the appointment of inspectors to assist in this role.

36.    Under Geneva City Code § 230-12, Code Enforcement Officer and inspectors may approve or deny applications for operating permits and certificates of occupancy, conduct inspections, and issue compliance orders specifying any violations of the New York Uniform Fire Prevention and Building Code or local codes and requiring remedial actions by the responsible party.

37.     Geneva City Code Chapter 230 does not include any authorization for such officer or an appointed inspector to issue an order vacating a structure for failure to obtain an operating permit without prior notice or opportunity for a hearing.

38.     Under Geneva City Code § 230-13, code enforcement personnel are subject to constitutional restrictions on unreasonable searches and seizures.

### New York Real Property Actions and Proceedings Law § 853

39.     New York Real Property Actions and Proceedings Law (RPAPL) § 853 provides a cause of action and treble damages against a party who unlawfully ejects a person from real property.

### V. STATEMENT OF FACTS

### Plaintiff's Interest in the Property

40.     In September 2017, Ms. Sapp signed a year-long lease with the owner of the property located at 110-112 Andes Avenue, Geneva, Ontario County, New York (the premises). The lease began on or about September 11, 2017 and was for Apartment #1 in the building.

41.     Ms. Sapp's apartment was located on the first floor of the two-story building located at 110-112 Andes Avenue, which contained 5 units in total.

42.     On or about September 15, 2017, Ms. Sapp, along with her 5-year-old daughter, moved into the apartment at 110 Andes Avenue.

43.     Upon information and belief, the Ontario County Department of Social Services paid $515 and Catholic Charities $200 to A6 Properties LLC on behalf of Ms. Sapp as a security deposit for the premises.

44.     Upon information and belief, the Ontario County Department of Social Services

also paid a prorated amount of the first month's rent for the premises for a total of $476.60 to A6

Properties, LLC for the time period from September 11, 2017 to September 30, 2017.

45.     Ms. Sapp then became responsible for paying rent to the property owner in the

amount of $715 per month beginning in October 2017.

46.     Ms. Sapp supports herself by working two jobs.

47.     The premises located at 110 Andes Avenue, Apartment #1, Geneva, Ontario

County, New York 14456 were Ms. Sapp and her daughter's residence beginning approximately

September 15, 2017 and continuing until the events complained of.

### Ms. Sapp's Removal from Premises

48.     On January 30, 2018, in the middle of an upstate New York winter, Defendants

gave Ms. Sapp and her five year-old daughter an Order to Vacate their home immediately due to

lack of an operating permit for the premises with no prior notice and no opportunity to challenge

the decision.

49.     Upon information and belief, no agent or employee of the City of Geneva

conducted an inspection of the premises before making a determination to placard the premises

and issuing the Order to Vacate notice on January 30, 2018.

50.     The January 30, 2018 Order to Vacate notice stated that an inspection of the

premises had not been done.

51.     Upon information and belief, neither the City of Geneva nor Defendant Brian

Kelly believed there was an actual or potential imminent risk to Ms. Sapp's health or safety or

that of others pursuant to Geneva City Code when making the determination to placard the

premises or issue the Order to Vacate notice.

52.    Upon information and belief, no condition in Ms. Sapp's apartment created an actual or potential imminent risk to her health or safety or that of others.

53.    Ms. Sapp did not make any complaints to code enforcement regarding the premises during the time she occupied them.

54.    Ms. Sapp had not had any contact with code enforcement, or any other agent or employee of the City of Geneva regarding the premises from the time she moved in until January 30, 2018.

55.    On the afternoon of January 30, 2018, another tenant in the building came to Ms. Sapp's door and asked Ms. Sapp if she had received a letter informing her that the building was being shut down.

56.    Ms. Sapp left her apartment and found a notice dated January 30, 2018, addressed to A6 Properties, LLC, entitled "ORDER TO VACATE" above her mailbox.

57.    The January 30, 2018 Order to Vacate notice stated that the property was being vacated "immediately for failure to obtain the required Operating Permit per NYS Uniform Codes." A copy of the notice provided to Ms. Sapp is attached hereto as Exhibit A.

58.    Prior to receipt of the January 30, 2018 Order to Vacate notice, Ms. Sapp was not aware that there was not a valid operating permit for the premises.

59.    The Order to Vacate notice did not identify a particular condition justifying the vacate order. It made only a broad reference to the Property Maintenance Code of New York State which stated that fire safety and property maintenance inspections must be done "at intervals not to exceed one year" for buildings which contain an area of public assembly and "at intervals consistent with local conditions, but in no event shall such intervals exceed … three years" for all other buildings.

60.    Upon information and belief, the most recent inspection of the premises by an agent or employee of the City of Geneva before the January 30, 2018 Order to Vacate Notice was issued was August 11, 2017.

61.    The Order to Vacate notice also did not provide information on any opportunity to challenge the determination.

62.    The January 30, 2018 Order to Vacate notice further stated that failure to vacate the premises would "give our office no choice than to seek City Court for their assistance in this matter."

63.    The January 30, 2018 Order to Vacate notice was signed by Defendant Brian Kelly.

64.    Ms. Sapp also found a yellow placard on the front door to the building. The placard listed the Geneva Fire Marshal's Office and had the signature of an Inspector.

65.    The placard stated that the building was "NOT TO BE OCCUPIED UNTIL AN OPERATING PERMIT HAS BEEN ISSUED." A photo of the posting is attached hereto as Exhibit B.

66.    Upon information and belief, on or about January 30, 2018, an agent or employee of the City of Geneva issued a placard, posted the placard on the premises, issued an Order to Vacate notice, and delivered the Order to Vacate notice to Ms. Sapp's mailbox.

67.    Upon information and belief, that agent or employee was Defendant Brian Kelly.

**Fallout from Removal**

68.    Following the posting of the subject premises on January 30, 2018 for failure to obtain an operating permit, residents of the premises including Ms. Sapp went to the Ontario

County Department of Social Services ("DSS") that afternoon.

69.     On January 30, 2018, Ms. Sapp met with her DSS caseworker, Julia Hernandez, regarding the Order to Vacate notice.

70.     Upon information and belief, while Ms. Sapp was at DSS, Ms. Hernandez made a phone call on Ms. Sapp's behalf to the City of Geneva regarding the Order to Vacate notice.

71.     Ms. Hernandez advised Ms. Sapp that she spoke with an agent of the City of Geneva regarding the Order to Vacate notice.

72.     Upon information and belief, the agent that Ms. Hernandez spoke with on January 30, 2018 was Defendant Brian Kelly.

73.     Ms. Hernandez advised Ms. Sapp that the City agent she spoke with on January 30, 2018 had told her that the residents were not allowed to stay at the premises.

74.     Ms. Hernandez advised Ms. Sapp that the City agent she spoke with on January 30, 2018 had told her that he would not be taking down the placard until the apartment had been properly inspected.

75.     On or about February 5, 2018, an inspection of the premises occurred by Defendant Brian Kelly. The premises did not pass inspection on February 5, 2018.

76.     Upon information and belief, a Property Inspection Report was issued by Brian Kelly shortly thereafter. The Property Inspection Report noted that "this property has been Vacated on January 30, 2018 and it shall remain vacated until such a time that all of the below listed code violations can be corrected and re-inspected to assure compliance."

77.     For approximately one to two weeks following the placarding of the premises,

Ms. Sapp reluctantly separated from her daughter in order to make sure that she would have a safe place to stay, leaving her to the care of family and friends.

78. For approximately one to two weeks following the placarding of the premises, Ms. Sapp slept wherever she could. Ms. Sapp stayed with family when she could, giving them cash to compensate them, and spent several nights in her car in freezing temperatures when she could not.

79. Ms. Sapp was fearful that continuing to use the premises could result in her arrest, Child Protective Services issues, or other legal consequences.

80. It was Ms. Sapp's belief that occupancy of the apartment during this period was prohibited due to the Order to Vacate notice she received, the placard that remained on the door to the premises, and the conversation she had had with Julia Hernandez, her DSS caseworker.

81. However, Ms. Sapp had no safe and sustainable location to keep her daughter long-term due to lack of space for her and her daughter at her mother's place.

82. Moreover, Ms. Sapp's daughter was experiencing extreme stress due to their separation. Ms. Sapp is a single mother to her then-five year-old daughter, who was very anxious whenever Ms. Sapp was not around. Ms. Sapp's daughter was particularly upset whenever they had to sleep in separate places. The situation was made all the more difficult by the fact that Ms. Sapp could not tell her the truth about where Ms. Sapp was sleeping.

83. Accordingly, Ms. Sapp and her daughter returned to sleeping at the premises. When Ms. Sapp first returned to the apartment, her use and possession was substantially impaired due to her fear of legal consequences, as the property remained placarded.

84.     Ms. Sapp would wake up and leave the premises early in the morning, go to work, pick her daughter up from school, then going to her mother's house to wait until it was late in the evening. She would then returning to the premises late in the evening in the dark.

85.     On or about February 23, 2018, Ms. Sapp's counsel sent a letter to counsel for the Defendant City of Geneva, objecting to Ms. Sapp's dispossession from the premises.

86.     The February 23, 2018 letter from Plaintiff's counsel included citations to case law and New York State regulations regarding provision of due process in code enforcement activities.

87.     The February 23, 2018 letter from Plaintiff's counsel asserted Ms. Sapp's rights to re-assert tenancy and possession of the property, and requested that no adverse actions be taken by Defendant for any decision by Ms. Sapp to reassert possession.

88.     Around this time, Ms. Sapp became more comfortable using the premises normally, which she did for several days.

89.     Ms. Sapp never received any direct communication from Brian Kelly, or any other agent or employee of the City of Geneva, regarding her ability to return to the premises, other than the January 30, 2018 order to vacate notice and the placard placed on the door to the premises.

90.     As the situation dragged on, Ms. Sapp began to look for more permanent alternate housing. Near the end of February, Ms. Sapp paid for three nights at the hotel where she was employed.

91.     Ms. Sapp also began to look for more permanent housing after receiving threats

from the owner of the premises that he intended to illegally dispose of her personal property. She applied for assistance to move into a new apartment at the Department of Social Services, but was denied assistance needed to relocate.

92.    At the end of February, Ms. Sapp entered into a lease agreement for alternative housing and thereafter moved out of the premises.

93.    Upon information and belief, on or about March 6, 2018, a re-inspection of the premises occurred by Defendant Brian Kelly.

94.    The premises passed inspection on March 6, 2018, and a Conditional Operating Permit was granted by Fire Chief/Fire Marshal Michael A. Combs, expiring on July 23, 2018.

95.    Ms. Sapp was not directly notified by the City of Geneva of the City's intention to re-inspect on March 6, 2018, or of the results of the March 6, 2018 re-inspection.

96.    In issuing the January 30, 2018 Order to Vacate notice and placarding the premises, Defendant Brian Kelly acted with reckless indifference to Ms. Sapp's rights.

97.    In 2016, the Uniform Code was updated with the 2016 Uniform Code Supplement, which included provisions regarding provision of due process in conducting code enforcement activities.

98.    On September 28, 2016, the New York Department of State Division of Building Standards and Codes issued technical guidance to local code enforcement officials regarding Constitutional due process requirements when placarding an unsafe structure with a "do not occupy" notice.

99.    In 2017, the Uniform Code was updated with the 2017 Uniform Code Supplement, which included provisions regarding provision of due process in conducting code

enforcement activities.

100.    Upon information and belief, New York state law and regulations require periodic training by all government employees acting as code enforcement officers in the completion of their duties. Completion of this training is required before code enforcement officers can continue working in an enforcement capacity.

101.    Upon information and belief, officers performing code enforcement duties in New York State are supposed to receive training on Constitutional due process requirements as part of their periodic Code Enforcement Basic Training.

102.    Upon information and belief, Defendant Brian Kelly routinely issues notices immediately vacating properties that lack the requisite specificity under local law and the Constitution.

103.    Upon information and belief, Defendant Brian Kelly routinely issues notices immediately vacating properties without prior notice or opportunity for a hearing when there is no imminent risk of harm.

104.    Upon information and belief, Defendants City of Geneva is aware that Defendant Brian Kelly routinely issues notices immediately vacating properties without prior adequate notice or opportunity for a hearing when there is no imminent risk of harm.

105.    Upon information and belief, Defendant City of Geneva has not taken actions to ensure that tenants or occupants are provided with prior adequate notice and an opportunity to challenge a determination that a structure must be vacated.

106.    As a result of the actions and omissions of the Defendants, Ms. Sapp was forced to scramble to find and pay for alternate housing. When she couldn't find alternative housing,

Ms. Sapp suffered unnecessary stress and embarrassment of temporary homelessness. She also suffered unnecessary stress and embarrassment seeking the assistance of family members and friends who would provide shelter for her five-year old daughter, and asking for assistance from her employer to allow her to stay at the hotel where she worked. She experienced stress and anxiety attempting to protect her young daughter from unfolding events, and distress related to separation from her daughter.

107.    As a result of the acts and omissions of Defendants, Ms. Sapp has suffered injury and loss, including but not limited to, monetary losses, loss of housing and a period of homelessness, emotional distress due to separation from her child, embarrassment, a deprivation of her rights to due process, and a deprivation of her rights to be free from unlawful seizures.

## V. PROCEDURAL HISTORY

108.    On April 25, 2018, Ms. Sapp caused a notice of claim to be served on Defendant City of Geneva pursuant to New York General Municipal Law §§ 50-e and 50-i .

109.    On June 25, 2018, Ms. Sapp gave testimony at a hearing pursuant to New York General Municipal Law § 50-h.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

110.    Ms. Sapp re-alleges and incorporates by reference Paragraphs 1 through 109 as if fully set forth herein.

111.    Defendants, acting in concert and under color of law, violated Ms. Sapp's right to due process of law under the Fourteenth Amendment to the United States Constitution as made actionable by the Civil Rights Act of 1871, 42 U.S.C. §1983, by their actions and inactions.

112.    Defendants The City of Geneva and Brian Kelly placarded and allowed to be placarded the premises, and issued and allowed to be issued an Order to Vacate notice, without providing a notice which described or cited exigent circumstances or a special government need which justified deprivation of Ms. Sapp's property rights without a pre-deprivation hearing.

113.    Defendants The City of Geneva and Brian Kelly placarded and allowed to be placarded the premises, and issued and allowed to be issued an Order to Vacate notice, without providing notice of available administrative proceedings to challenge the vacate order.

114.    Defendants The City of Geneva and Brian Kelly placarded and allowed to be placarded the premises, and issued and allowed to be issued an Order to Vacate notice, without providing an opportunity for a pre- or post-deprivation hearing.

115.    Defendants Brian Kelly placarded the premises and issued and allowed to be issued an Order to Vacate notice without having the legal authority to do so.

116.    Upon information and belief, Defendant City of Geneva knowingly and deliberately maintains an official pattern, practice or custom under which agents or employees of the City placard property without adequate notice and without provision of appropriate pre- or post-deprivation relief in conformity with due process requirements.

117.    Defendants' Order to Vacate the premises issued to Ms. Sapp and her young daughter constitutes an unlawful deprivation of Ms. Sapp's due process rights in violation of the Fourteenth Amendment to the United States Constitution.

118.    Defendant City of Geneva is liable for the deprivation of Ms. Sapp's Fourteenth Amendment rights. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury... the government as an entity is responsible under § 1983").

119.    Based upon the foregoing, Ms. Sapp is entitled to an award of compensatory damages and punitive damages as well as an award for her reasonable attorneys' fees and costs. Ms. Sapp further seeks declaratory and injunctive relief barring Defendants from ongoing violations of the Fourteenth Amendment.

SECOND CLAIM FOR RELIEF:
UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT
TO THE U.S. CONSTITUTION

120.    Ms. Sapp re-alleges and incorporates by reference Paragraphs 1 through 119 as if fully set forth herein.

121.    Defendants, acting in concert and under color of law, violated Ms. Sapp's right to freedom from unlawful seizure under the Fourth Amendment to the United States Constitution as made actionable by the Civil Rights Act of 1871, 42 U.S.C. §1983, by their actions and inactions.

122.    Ms. Sapp had an established property interest in the premises as a tenant and occupant of the apartment at 110 Andes Avenue, Apartment #1.

123.     Defendants Brian Kelly and the City of Geneva, individually and in concert, ordered Ms. Sapp to leave her property via written Order to Vacate, and placarded the entrance to the property.

124.     Such action substantially interfered with Ms. Sapp and her daughter's use and possession of the premises.

125.     Such action was without any basis in the laws or codes of the state of New York or the City of Geneva.

126.     Ms. Sapp was damaged in the amount of the value of her loss of housing.

127.     Ms. Sapp was also damaged by the illegal eviction in the amount of all consequential and reasonable monetary damages sustained as a result of having to find interim alternative housing during a period in which she was entitled to occupy the premises.

128.     Defendants' Order to Vacate the premises issued to Ms. Sapp and her young daughter constitutes an unlawful seizure and deprivation of real property rights in violation of the Fourth Amendment to the United States Constitution. *See Soldal v. Cook County*, 506 U.S. 56, 61 (1992)("A 'seizure' of property... occurs when 'there is some meaningful interference with an individual's possessory interests in that property'").

129.     Defendant City of Geneva is liable for the deprivation of Ms. Sapp's Fourth Amendment rights. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury... the government as an entity is responsible under § 1983").

130.    Based upon the foregoing, Ms. Sapp is entitled to an award of compensatory damages as well as an award for her reasonable attorneys' fees and costs. Ms. Sapp further seeks declaratory and injunctive relief barring Defendants from ongoing violations of the Fourth Amendment.

THIRD CLAIM FOR RELIEF:
UNLAWFUL EVICTION

131.    Ms. Sapp re-alleges and incorporates by reference Paragraphs 1 through 130 as if fully set forth herein.

132.    Defendants Brian Kelly and the City of Geneva individually and in concert permanently ejected Ms. Sapp and her daughter from the leased premises, without instituting any legal proceeding to extinguish her right to continued possession of the premises.

133.    Such action was without any basis in the laws or codes of the state of New York or the City of Geneva.

134.    Where a party by unlawful means ejects another from real property, the injured party is entitled to collect treble damages against the wrongdoer under New York State Real Property Actions and Proceedings Law §853.

135.    Ms. Sapp was damaged in the amount of the value of her loss of housing.

136.    Ms. Sapp was also damaged by the illegal eviction in the amount of all consequential and reasonable monetary damages sustained as a result of having to find interim alternative housing during a period in which she was entitled to occupy the premises.

137.    Based upon the foregoing, Ms. Sapp is entitled to an award of treble compensatory damages. Ms. Sapp further seeks declaratory relief regarding Defendants' violations of RPAPL §853.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a judgment against the Defendants as follows:

1.  Assuming jurisdiction over this case;

2.  Declaring the actions of Defendants, as set forth above, to be an unlawful denial of Plaintiff Shayla Sapp's right to due process of law, as protected by the 14th Amendment to the U.S. Constitution and made actionable by the Civil Rights Act of 1871, 42 USC § 1983;

3.  Declaring the actions of Defendants, as set forth above, to be an unlawful seizure of Plaintiff Shayla Sapp's property, as protected by the 4th Amendment to the U.S. Constitution and made actionable by the Civil Rights Act of 1871, 42 USC § 1983;

4.  Declaring the actions of Defendants, as set forth above, to be a violation of Geneva City Code Chapter 230;

5.  Declaring the actions of Defendants, as set forth above, to be a violation of RPAPL § 853;

6.  Enjoining Defendants City of Geneva and Brian Kelly from taking action to placard dwellings without proper inquiry, notice of specific defect, compliance with all state and local statutes and regulations, and notice of pre- or post-deprivation relief available, or otherwise continuing to act upon their unlawful customs, policies and procedures in violation of the Geneva City Code Chapter 230, New York State laws and Regulations including RPAPL § 853, and the 4th and 14th Amendments to the U.S. Constitution;

7.  Awarding Plaintiff compensatory damages against Defendant City of Geneva and Defendant Brian Kelly in an amount this Court shall consider to be just, reasonable, and fair;

8.  Awarding Plaintiff punitive damages against Defendant Brian Kelly in his individual capacity;

9. Awarding Plaintiff treble damages for unlawful eviction under Real Property Actions and Proceedings Law § 853 against Defendants City of Geneva and Brian Kelly;

10. Awarding such other damages as are necessary to fully compensate Plaintiff;

11. Awarding costs, disbursements and attorney's fees to Plaintiff under 42 U.S.C. §1988; and

12. Awarding such additional and further relief as the interests of justice require.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:      April 29, 2019
            Geneva, New York


By: Kari A. Talbott
Legal Assistance of Western New York, Inc.
Attorneys for Plaintiff Shayla Sapp
361 South Main Street
Geneva, NY 14456
(315) 781-1465
ktalbott@lawny.org

# EXHIBIT A



CITY OF GENEVA, NEW YORK
Office of the Fire Marshall
Division of Development Services
47 Castle Street, City Hall
Geneva, NY  14456

# ORDER TO VACATE
## 110-112 ANDES AVENUE

January 30, 2018

A6 Properties, LLC
154 Cobblestone Court Drive
Victor, NY 14564

*RE: 110-112 Andes Avenue (sbl# 1048-3-27)*

Dear Mr. D 'Anna:

We are writing to you today to inform you that we are **VACATING** your property **IMMEDIATELY** for failure to obtain the required Operating Permit per NYS Uniform Codes. This property has not had an operating permit since **February 25, 2017** and after numerous letters, set and cancelled appointments, and no shows, an inspection has **NOT** been done as of today. Due to the fact that you have not obtained the required Operating Permit, our office has no other choice than to **VACATE** the property.

Further, be advised that the NYS Uniform Codes 19 CCR-NY 1203.3 (H) states as follows:

*(h) Fire safety and property maintenance inspections. Provisions shall be made for:*

*(1) fire safety and property maintenance inspections of buildings which contain an area of public assembly at intervals not to exceed one year;*

*(2) fire safety and property maintenance inspections of all multiple dwellings and all nonresidential occupancies at intervals consistent with local conditions, but in no event shall such intervals exceed one year for dormitory buildings and three years for all other buildings.*

Again, at this time, our office is hereby ordering this property **VACATED** until such a time that you can obtain the required Operating Permit. You will need to call this office to arrange for an inspection, and meet all applicable NYS Uniform Code requirements, before we can allow you to re-occupy the building. Also, be advised that your failure to vacate the property will give our office no choice than to seek City Court for their assistance in this matter.

While it is not our intention to inconvenience you or your tenants, it is our responsibility to assure that each property that requires an Operating Permit is inspected and complies per NYS Uniform Codes.

Please call our office to schedule a re-inspection so we can verify that the cited code violations are corrected and that your property meets all the requirements for obtaining an Operating Permit.

Thank you in advance for your co-operation.

Sincerely,

Brian Kelly
City of Geneva

Cc: file, DSS, Geneva Housing, Fire Chief, tenants

# EXHIBIT B

